UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DENISE SAVAGE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:10-0120 Hon. Marvin E. Aspen |
| CITY OF LEWISBURG, TENNESSEE, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Denise Savage filed this Title VII employment discrimination and sexual harassment case on December 29, 2010. The case is set for trial on December 8, 2014. Presently before us is Plaintiff's Second Motion for Sanctions against Defendant City of Lewisburg. For the reasons discussed below, we deny Plaintiff's motion for sanctions, but we grant her request for an order compelling certain discovery.

**BACKGROUND**

Plaintiff alleges that she suffered employment discrimination, sexual harassment, and retaliation from her former co-workers and superiors while working as a patrol officer for the City of Lewisburg Police Department ("the police department"). She brings her claims under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000(e)(2)(a), (3)(a). Plaintiff alleges that from the beginning of her employment at the police department she was subject to lewd and sexually harassing comments and gestures from her co-workers. (Compl. ¶¶ 8–9, 14–16.) After reporting this conduct to her superiors, Plaintiff claims that she suffered retaliation from her fellow officers and supervisors who ignored and/or delayed responding to her calls for backup in

1

the field. (*Id.* ¶¶ 10–11.) Plaintiff continued to complain about this conduct, but she claims that her superiors offered no assistance or solutions. (*Id.* ¶¶ 12–13, 17–20.) Instead, Defendant told Plaintiff to continue working her normal shift, without any assurance that she would receive the necessary backup or that Defendant would address the alleged sexual harassment and retaliation. (*Id.* ¶ 22.) According to Plaintiff, as a result of the dangerous and hostile work environment that she faced, she was forced to resign from the police department on June 24, 2009. (*Id.* ¶ 23.)

In addition to sexual harassment and retaliation, Plaintiff claims that Defendant discriminated against her by disciplining her more severely and paying her less than male officers, and by denying her promotions and other employment opportunities because of her gender. (*Id.* ¶¶ 26–27.)

Plaintiff filed her first discovery requests in July 2011. After some back-and-forth between the parties, Plaintiff filed a motion to compel discovery on January 26, 2012. District Judge Sharp accepted and approved Magistrate Judge Knowles's order denying the motion to compel in its entirety. (Dkt. 43, 5/14/12 Order; Dkt. 50, 7/11/12 Order.) Subsequently, Plaintiff deposed Defendant's employees for three days. Plaintiff claims that during the depositions she discovered that Defendant submitted false and incomplete discovery responses and made false statements to the court in response to the motion to compel. (Dkt. 74, 2d Mot. for Sanctions at 1, 3–4.) In light of the new information, Plaintiff filed her first motion for sanctions on January 10, 2013. On September 11, 2013, the Magistrate Judge denied the motion without reaching the merits because Plaintiff failed to comply with Local Rule 37.01.[1] (Dkt. 70, 9/11/13 Order; *see* Dkt. 75, 11/20/13 Order.) Plaintiff filed her Second Motion for Sanctions on November 18, 2013. This second sanctions motion is largely premised on the same substantive arguments as

---

[1] The court found that Plaintiff did not submit a Joint Written Statement or an adequate Certificate of Consultation. (Dkt. 70, 9/11/13 Order.)

the first, but Plaintiff resolved her earlier procedural defects by submitting a Proposed Joint Written Statement and a sufficient Certificate of Consultation.

Plaintiff's current motion raises six discovery issues: (1) police department audio recordings; (2) Police Chief Chuck Forbis's ("Chief Forbis's") handwritten investigation notes; (3) information related to other discrimination and retaliation complaints, including Captain Rebekah Mitchell's ("Captain Mitchell's") personnel file; (4) copies of documents that Plaintiff requested while visiting the Lewisburg police department; (5) the police department's policy on administrative leave; and (6) police department pay raise and promotion data. Plaintiff claims that Defendant acted in bad faith by producing this discovery either late or not at all, fraudulently stating or implying that the information or documents do not exist, and otherwise abusing the discovery process. (2d Mot. for Sanctions at 1.) Plaintiff asks us to enter a default judgment against Defendant or, in the alternative, to issue adverse jury inferences and strike Defendant's affirmative defenses. In addition, Plaintiff seeks monetary sanctions and an order compelling Defendant to produce certain discovery. Defendant argues that it is under no obligation to produce the information sought, and further contends that Plaintiff's entire motion is precluded by the Magistrate Judge's order denying the first sanctions motion.

## LEGAL STANDARD

Plaintiff brings her motion for sanctions pursuant to Federal Rule of Civil Procedure 37(c) and the court's inherent authority. Rule 37(c) provides that a party who fails to disclose information required by Rule 26(a) or fails to supplement a discovery response pursuant to Rule 26(e) is not permitted to use such information at trial unless the failure was substantially justified or is harmless. Fed. R. Civ. Proc. 37(c)(1). Rule 37(c) also permits the court to impose other sanctions for Rule 26 violations, such as those listed in Rule 37(b)(2)(A). Rule 26(e)

3

requires a party to timely supplement earlier discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. Proc. 26(e).

The district court also has the inherent power to sanction a party for bad faith conduct at any point during the litigation. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 2123 (1991)). However, "a court must exercise caution in invoking its inherent power and comply with the mandates of due process." *Dell, Inc. v. Elles*, No. 07 C 2082, 2008 WL 4613978, at *2 (6th Cir. June 10, 2008) (citing *Chambers*, 501 U.S. at 50, 111 S. Ct. at 2123). "[I]n order for a court to find bad faith sufficient for imposing sanctions under its inherent powers, the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Prods., Inc. v. Lexmark Intern., Inc.*, 602 F.3d 742, 753 (6th Cir. 2010). "Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose." *Id.* at 754. "Because the court's inherent power to impose sanctions is discretionary, the court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred." *Murray v. City of Columbus, Ohio*, 534 F. App'x 479, 485 (6th Cir. 2013). This is particularly true where the wrongdoing did not prejudice the other party. *See id.*

**MERITS**

I.     **Impact of First Sanctions Motion**

Defendant argues that Plaintiff's current motion is redundant and frivolous because it raises the same issues argued in Plaintiff's first motion for sanctions. (Dkt. 87, Resp. at 1–4.) The Magistrate Judge, however, denied the first motion because Plaintiff failed to comply with the procedural requirements of Local Rule 37. (Dkt. 70, 9/11/13 Order.) The cases that Defendant cites to support its argument are not analogous here. Unlike in this case where the court has never addressed the merits of Plaintiff's arguments as currently framed, the courts in those cases had already ruled on the substantive issues when the movant sought reconsideration.

Having resolved her procedural shortfalls by filing a Proposed Joint Statement of Issues and Certificate of Consultation, we will now reach the merits of Plaintiff's arguments for the first time. *See Holder v. AT&T Servs., Inc.*, No. 11 C 0076, 2013 WL 5817575, at *4 (M.D. Tenn. Oct. 29, 2013) (permitting a party to refile its motion in compliance with Local Rule 37); *Emmerick v. Marsha Penley/Groseclose*, No. 07 C 13, 2007 WL 2257646, at *1 (E.D. Tenn. Aug. 6, 2007) (same).

II.    **Second Sanctions Motion**

We find that Defendant's conduct in this case does not warrant sanctions. Instead, the issues here are more akin to typical discovery squabbles that should be resolved on a motion to compel. If Defendant had failed to comply with a prior court order compelling discovery, then perhaps sanctions would be warranted under Rule 37(b). But, to date, the court has not compelled Defendant to respond to any of Plaintiff's discovery requests. At this point, we could only issue sanctions pursuant to our inherent authority, which requires a finding of bad faith, or under Rule 37(c), which requires a finding that Defendant failed to supplement its discovery

responses in a harmful and unjustified manner. We decline to make either finding on the facts presented.

First, Plaintiff asks us to sanction Defendant for not producing Captain Mitchell's personnel file and police department pay raise and promotion records. (2d Mot. for Sanctions at 16, 18–19.) These documents were the focus of Plaintiff's earlier motion to compel. Deciding the motion on the merits but before the end of discovery, the Magistrate Judge ordered that Defendant did *not* have to produce these records. (*See* Dkt. 43, 5/14/12 Order.) Although Plaintiff argues that new information disclosed during depositions clearly shows that the records are relevant and readily available, we cannot find that Defendant's continued refusal to produce that information is unreasonable in light of the court's past order.

Second, Plaintiff seeks sanctions related to certain documents and information that Defendant did eventually disclose: Chief Forbis's handwritten investigation notes; copies of files requested during counsel's visit to Lewisburg;[2] the police department's policy on administrative leave; and other complaints against the police department. (2d Mot. for Sanctions at 14, 16–17.) Plaintiff's primary complaints about these topics are that the documents were produced late, or that Defendant's written responses were misleading. We see no evidence in the record to find that Defendant intentionally withheld information or purposefully mislead Plaintiff. Rather, it appears that Defendant produced the documents that it believed were responsive in a timely fashion after discovering them. For example, Defendant claims that it did not know about Captain Mitchell's or Officer Amanda Newcomb-Binkley's ("Officer Binkley's") past gender

---

[2] Apparently the parties agreed that Plaintiff's counsel could visit the City of Lewisburg to inspect documents in person. Although Plaintiff claims that Defendant has not produced copies of the documents that her counsel requested during the visit, Defendant contends that it has. Since Plaintiff did not file a reply, we will assume that she has received the documents. If, however, Defendant has withheld any of these documents, it must produce them. (*See infra* Section III.B.)

6

discrimination complaints until the witnesses were deposed, at which time the women provided the information via their testimony. While we find that Defendant's method for answering this specific interrogatory was wholly insufficient, *see infra* Section III.C, we cannot find that its failure to discover the information sooner was so willful as to constitute bad faith.[3]

In any event, since Plaintiff received these documents and information well before trial (in some cases over two years), we find that any delay or confusion was harmless. *See Smith v. Pfizer Inc.*, 265 F.R.D. 278, 284 (M.D. Tenn. 2010) (finding that plaintiff's failure to supplement its disclosures was harmless when defendants had knowledge of the information through other means); *Encore Entm't, LLC v. KIDdesigns, Inc.*, No. 03 C 1129, 2005 WL 2249897, at *9 (M.D. Tenn. Sept. 14, 2005) (finding that the defendant did not violate Rule 26 supplemental disclosure requirements when the information at issue was made available to the plaintiff before the end of discovery); *see also* Fed. R. Civ. Proc. 26(e) advisory committee's note ("There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process.").

Third, Plaintiff argues that Defendant should be sanctioned for denying the existence of audio dispatch recordings and failing to produce them in response to discovery requests. (2d Mot. for Sanctions at 6–7.) She complains that during the depositions of numerous city employees it became clear that audio recordings existed that could corroborate her complaints that she did not receive adequate backup. (2d Mot. for Sanctions at 8.) Following this

---

[3] In fact, we are not convinced that even if Defendant had used proper search methods to answer the interrogatory either of the other discrimination complaints would have been discovered. Review of Officer Binkley's deposition shows that she asserted her discrimination complaint while working as a dispatcher sometime before 2005, thus it does not fall within the responsive time period of 2007 through 2010. (Dkt. 55-8, Binkley Dep. at 9, 18–19.) In addition, Captain Mitchell's discrimination complaints appear to be informal and thus could have been reasonably overlooked. (Dkt. 74-16, Mitchell Dep. Excerpts.)

testimony, Plaintiff contends that Defendant did not supplement or amend its discovery responses by producing these recordings. (2d Mot. for Sanctions at 10.) As further discussed below, we agree with Plaintiff that certain dispatch recordings are discoverable in this case. We will, however, give Defendant the benefit of the doubt that it acted in good faith by arguing that the recordings were not responsive and decline to sanction it at this time. *See Murray*, 534 F. App'x at 485 (explaining that the imposition of sanctions is discretionary). Moreover, even if Defendant should have produced the recordings sooner, there is still enough time for production and review before trial, thus any tardiness is harmless.

### III. Motion to Compel

Although we decline to issue sanctions at this time, for the reasons discussed below we will grant Plaintiff's request to compel production of certain documents and responses to certain interrogatories.

#### A. Audio recordings

In its first round of discovery requests, Plaintiff asked Defendant to identify and/or produce recordings "regarding the harassment, retaliation, and discrimination at issue in Plaintiff's Complaint," (RFI No. 4; RFP No. 8), "having to do with the investigation of the incidents set forth in Plaintiff's Complaint," (RFP No. 4), "involving Ms. Savage that were written by, recorded by, or written to any of the Councilmen, the Mayor, the Police Chief, or the City Manager," (RFP No. 23), and "any videotape, audiotape, digital recordings, or other surveillance recordings relating in any way to the assertions in Plaintiff's Complaint," (RFP No. 28). Without producing a single audio or video recording, Defendant responded that Plaintiff already possessed all responsive materials and/or none existed. (*See* 2d Mot. for Sanctions at 7–8.) Plaintiff argues that during depositions she learned that dispatch call recordings do exist that could corroborate her retaliation allegation. (2d Mot. for Sanctions at 8.) Defendant does not

8

deny the existence of these dispatch recordings. Instead, Defendant argues that the recordings are not relevant because Chief Forbis did not review them when he investigated Plaintiff's sexual harassment and retaliation complaints. (Resp. at 6.) Defendant explains that Chief Forbis instead reviewed handwritten dispatch logs, which it did produce. (*Id.*)

As Plaintiff correctly points out, however, neither her discovery requests nor the rules of discovery limit Defendant's discovery obligations to the recordings that Chief Forbis actually reviewed during his own investigation. (*See* 2d Mot. for Sanctions at 10.) Plaintiff's discovery requests sought recordings related to all the assertions in her complaint, not just the police department's investigations. One of Plaintiff's allegations is that after she reported sexual harassment to her superiors, her fellow officers and supervisors retaliated by ignoring or delaying requests for backup. (Compl. ¶¶ 11–12.) It is likely that these very backup requests and the responding officers' immediate reactions could be heard verbatim on the dispatch recordings. Thus, the recordings are likely to lead to evidence that is relevant to Plaintiff's retaliation claim, regardless of whether Chief Forbis reviewed them during his own investigation. Moreover, particularly if these tapes do contain inculpatory evidence, the jury could determine that Chief Forbis *should have* reviewed them. Just because Chief Forbis chose not to, does not mean they are not discoverable in this Title VII case. *See* Fed. R. Civ. Proc. 26(b) (explaining that the scope of discovery includes all information that "appears reasonably calculated to lead to the discovery of admissible evidence").

In addition, we cannot find that the written dispatch logs are a sufficient substitute for the audio recordings. It does not appear, and Defendant does not argue, that the written logs are verbatim transcripts of the audio logs. In fact, Defendant's response to the first sanctions motion suggests that the dispatch logs are simply sparse summaries: "[t]he dispatch logs are handwritten

9

notes made by the police dispatchers during a given shift indicating times that officers are checking in and out of service." (Dkt. 32, Resp. to Mot. to Compel at 5 n.2.) It is unlikely that any pauses, groans, or explicit unwillingness to provide backup would be relayed in the written logs. Since the dispatch calls are relevant to Plaintiff's claims and not duplicative of other evidence, Defendant must produce them.

In her motion, Plaintiff suggested that she is willing to limit her requests for recordings to specific dates on which she claims backup failures occurred. (2d Mot. for Sanctions at 10–11.) We find that limiting the scope of discovery to those dates will appropriately balance the likely relevance of the recordings with any burden that Defendant may face in producing them. Plaintiff has until the close of business on October 8, 2014 to provide Defendant with a complete list of relevant dates. If there is any dispute, we expect the parties will work together to agree upon a reasonable set of responsive dates. Defendant must then produce all audio or video recordings, including dispatch calls, related to Plaintiff's complaints of harassment, discrimination, or retaliation on those dates by October 20, 2014.

### B. Copies of documents from Lewisburg

Plaintiff's motion also contends that Defendant refused to produce copies of nearly fifty documents that her attorney requested when she visited Lewisburg. (2d Sanctions Mot. at 17 & Ex. T.) Defendant's only response is that it did produce these documents. (Resp. at 10.) Since Defendant does not challenge Plaintiff's entitlement to the documents listed on Exhibit T (Dkt. 74-21), to the extent it has not produced them it must do so by October 20, 2014.

### C. Other discrimination, harassment and retaliation complaints

In her first discovery requests, Plaintiff asked Defendant to identify other complaints of harassment, discrimination and retaliation made against police department personnel from January 1, 2007 through the present. (RFI 5.) Defendant responded that it was "unaware" of any

10

complaints other than Plaintiff's. At the depositions of two other female police officers—Captain Mitchell and Officer Binkley—the officers testified that they had in fact raised formal and/or informal discrimination complaints in the past. Although Defendant's failure to disclose these complaints earlier does not warrant sanctions at this time, we do find Defendant's justification for the delay concerning. Defendant defends the oversight by stating that Chief Forbis signed the interrogatory responses on behalf of the City and he did not personally know about the past complaints. (Resp. at 7–8.) But it is well-understood that when answering interrogatory responses organizational parties "must furnish the information available to the party." Fed. R. Civ. Proc. 33(b)(1)(B). It is not sufficient to rely exclusively on the personal knowledge of one agent. *See N.L.R.B. v. Rockwell-Standard Corp., Transmission & Axle Div., Forge Div.*, 410 F.2d 953, 958 (6th Cir. 1969) ("[A] party cannot avoid giving an answer to an interrogatory by an allegation of ignorance if the party can obtain the information from sources under its control."); 8B C. Wright & A. Miller, Fed. Prac. & Proc. § 2177 (3d ed. 2014) ("In answering interrogatories, a party is charged with knowledge of what its agents know, or what is in records available to it . . .") Thus, we order that Defendant supplement its answer to Interrogatory No. 5 utilizing the full knowledge of the City and sources under its control—not just Chief Forbis.

Moreover, we take this opportunity to remind Defendant of its ongoing obligation to supplement *all* of its discovery responses pursuant to Rule 26(e).[4] If the City has not disclosed other information that is available to it as an organization, it must do so by October 20, 2014.

---

[4] *See* Dkt. 54, 12/20/12 Order (ordering parties to supplement discovery no later than thirty days before trial, or face sanctions).

### D. Captain Mitchell's personnel file

Defendant also refuses to produce Captain Mitchell's personnel record.[5] (*See* RFP No. 35.) Plaintiff argues that because Captain Mitchell also complained of discrimination in the past, her personnel file is relevant and discoverable. (2d Mot. for Sanctions at 16.) Defendant responds that it has no "duty" to disclose Captain Mitchell's file because she is not similarly situated to Plaintiff. (Resp. at 8–10.) Plaintiff is correct that even if Captain Mitchell isn't "similarly situated" for the traditional purpose of the *McDonald Douglas* test, her personnel file could be relevant to other aspects of Plaintiff's claims. For example, courts have found that similar acts of discrimination by a defendant against a non-party can be admissible as circumstantial evidence. *See Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008); *Van Buren v. Ohio Dep't of Pub. Safety*, 996 F. Supp. 2d 648, 669 (S.D. Ohio 2014). In other words, Captain Mitchell's discrimination complaints against the police department could be circumstantial evidence making discrimination more likely in Plaintiff's individual case.

The Supreme Court has instructed us not to apply a per se rule excluding this type of evidence, often referred to as "me-too" or "other acts" evidence. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380–81, 387, 128 S. Ct. 1140, 1143, 1147 (2008); *Griffin v. Finkbeiner*, 689 F.3d 584, 598–600 (6th Cir. 2012). "Whether [other acts] evidence is relevant is a case-by-case determination that 'depends on many factors, including how closely related the

---

[5] The Magistrate Judge previously denied Plaintiff's motion to compel Captain Mitchell's personnel file. (Dkt. 43, 5/14/12 Order.) In Plaintiff's motion to compel, she argued that Captain Mitchell's file was relevant because evidence that Captain Mitchell had *not* also reported discrimination or harassment would support her claim of "'similarly situated non-protected' employees being treated more favorably." (Dkt. 27-2, Mot. to Compel at 7.) We agree with the Magistrate Judge that such evidence would not be relevant to support that claim. However, after Captain Mitchell's deposition, Plaintiff now argues that the file is relevant because Captain Mitchell *has* complained of discrimination. As discussed above, we find this argument more persuasive.

evidence is to the plaintiff's circumstances and theory of the case.'" *Griffin*, 689 F.3d at 598

(quoting *Sprint*, 552 U.S. at 388, 128 S. Ct. at 1147). At the discovery stage the relevance standard is low, and thus we should give Plaintiff leeway to explore potential "me too" evidence. *See Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376, 378 (S.D.N.Y. 1996) ("[C]ivil discovery rules are to be construed liberally in Title VII cases in order to provide the plaintiff with 'broad access to employers' records.'" (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 658, 109 S. Ct. 2115, 2125 (1989))). Since Captain Mitchell has also raised concerns regarding gender discrimination at the police department, we find that her personnel file is at least reasonably likely to lead to admissible evidence relevant to Plaintiff's discrimination claim. *See Gibson v. Servicemaster Co.*, 08 C 210, 2009 WL 1607710, at *4 (E.D. Tenn. June 8, 2009) (ordering discovery of "me too" evidence in an employment discrimination case); *see also Geiger v. Pfizer, Inc.*, No. 06 C 636, 2009 WL 1026479, at *8–9 (S.D. Ohio Apr. 15, 2009) (deferring the decision of whether "me too" evidence is admissible until trial). Thus, Defendant must produce Captain Mitchell's entire personnel file by October 20, 2014.

### E. Pay increase and promotion records

Plaintiff also requested information related to pay increases and promotions at the police department between January 1, 2007 and January 1, 2010. (RFI No. 15.) Defendant refused to produce any information responsive to this request, arguing that it would be too burdensome. (Resp. at 11.) The district court may limit discovery where the "burden or expense . . . outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. Proc. 26(b)(2)(C)(iii). The burden is on the party resisting production to establish that the request "is of such marginal relevance that the

13

potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 311 (W.D. Tenn. 2008).

Here, we do not find Defendant's argument persuasive. As an initial matter, pay raise and promotion data is relevant to this case in light of Plaintiff's gender discrimination claim.[6] In her complaint, Plaintiff alleges that she was "denied promotion and other employment opportunities because of her gender." (Compl. ¶ 26.) "It is well-settled that information concerning an employer's general employment practices is relevant even to a Title VII individual disparate treatment claim." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). Specifically, pay raise and promotion data for other police department employees may be relevant to whether Plaintiff was in fact treated differently based on her gender. *Id.* at 906–07 (affirming district court's ruling to limit discovery of defendant's payroll records to employees in plaintiff's local department in the past two-and-a-half years); *see Willis v. Golden Rule Ins. Co.*, No. 89 C 0189, 1991 WL 350038, at *3–4 (E.D. Tenn. Aug. 5, 1991) (ordering discovery of employee promotions in an age discrimination case); *see also Walton v. Cives Corp.*, No. 10 C 87 HL, 2011 WL 995932, at *2 (M.D. Ga. Mar. 17, 2011) (same).

In addition, we find that the purported burden on Defendant does not outweigh Plaintiff's need for discovery. Defendant contends that the police department does not maintain its pay raise and promotion information electronically. Thus, to respond to Plaintiff's discovery

---

[6] Although the Magistrate Judge previously found that Plaintiff did not allege that she was denied promotions and thus refused to compel discovery into pay raise and promotion data, (Dkt. 43, 5/14/12 Order at 4), Plaintiff has continued to develop this claim throughout discovery. After clearly stating in her complaint that Defendant denied her promotions, (Compl. ¶ 26), Plaintiff sought written and document discovery on the topic, (RFI Nos. 15 & 16; RFP Nos. 2, 3, 19, 30–41), and questioned numerous witnesses about the police department's pay raise and promotion practices during depositions, (s*ee* Dkt. 55-3, Bailey Dep. at 59–62; Dkt. 55-5, Fuller Dep. at 67–74; Dkt. 55-6, Mitchell Dep. at 37–47, 61–68; Dkt. 55-7, Forbis Dep. at 161–68; Dkt. 55-8, Binkley Dep. at 32–36). Accordingly, we find that Plaintiff has sufficiently stated and pursued this claim such that discovery is warranted.

requests, it would have to manually review each employee's personnel file. (Resp. at 11.) However, Plaintiff's request is narrowly tailored to include only employees at the Lewisburg Police Department—which Defendant asserts includes fifty-nine individuals, (Dkt. 32, Resp. to Mot. to Compel at 3)—over a three-year time period. Reviewing fifty-nine personnel files should not reasonably take an inordinate amount of time and Plaintiff has a strong need for the information. Without access to pay raise and promotion records of similarly situated employees, it would be unreasonably difficult for Plaintiff to use the *McDonald Douglas* indirect method to prove that she was denied promotion and other employment opportunities due to her gender. *See Marcum v. Scioto Cnty., Ohio*, No. 10 C 790, 2012 WL 2018523, at *6 (S.D. Ohio June 5, 2012) (finding the "potentially burdensome process" of reviewing 187 inmate files "does not outweigh plaintiff's demonstrated need for the discovery to prove her municipal liability claim"); *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 405 (N.D. Ohio 2011) ("The mere fact that discovery is burdensome to them is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence." (internal citation omitted)). Accordingly, Defendant must make the information requested in Interrogatory 15 available to Plaintiff by October 20, 2014. If, however, Defendant does not want to answer the interrogatory by creating a list as Plaintiff requested, it may instead produce all fifty-nine personnel files.

**CONCLUSION**

For the foregoing reasons, we deny Plaintiff's request for sanctions, but we grant Plaintiff's request for an order compelling discovery. Subject to the limitations and instructions provided above, by October 20, 2014 Defendant must: (1) produce pay raise and promotion data for Lewisburg Police Department employees from January 1, 2007 through January 1, 2010 (RFI No. 15); (2) produce Captain Mitchell's personnel record (RFP. No. 35); (3) supplement its response to Interrogatory 15; (4) produce any outstanding documents listed on Plaintiff's Exhibit T; and (5) produce audio recordings related to Plaintiff's complaint from the dates to be agreed upon by the parties (RFI No. 4; RFP No. 4; RFP No. 8; RFP No. 23; RFP No. 28).

The trial will proceed as scheduled on December 8, 2014.

We expect the parties to proceed in good faith to implement this order and anticipate that they will do so as ordered without requiring this court to issue sanctions for failure to comply with the letter and spirit of this order.

It is so ordered.

_/s/ Marvin E. Aspen_
Marvin E. Aspen
United States District Judge

Dated: Chicago, Illinois
October 6, 2014